**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KEMARLEY BRAHAM,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-02050** |
| | § | |
| **HOUSTON POLICE DEPARTMENT;** | § | |
| **CITY OF HOUSTON; JOEY ELLIS;** | § | |
| **JUANITA VELDEZ; ANDREW** | § | |
| **ZIMZORES and WILLIAM SMITH** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, KEMARLEY BRAHAM, ("Plaintiff") and files this First Amended Complaint against Defendants, Houston Police Department, City of Houston, Joey Ellis, Juanita Veldez, Andrew Zimzores and William Smith ("Defendants"), and respectfully shows the Court the following:

1. This is a civil rights and employment retaliation action brought pursuant to 42 U.S.C. § 1983 and the Title VII of the Civil Rights Act of 1964, arising from Defendant's unlawful retaliation against Plaintiff for engaging in protected activity. Plaintiff seeks redress for violations of his rights under the First and Fourteenth Amendments, as well as federal statutory protections prohibiting workplace retaliation.

2. Plaintiff, Kemarley Braham, was employed as a police officer by the City of Houston and performed his duties in accordance with departmental standards. After Plaintiff engaged in protected activity – specifically, filing a civil action asserting his legal rights – Defendants subjected him to adverse employment actions culminating in an indefinite suspension, which functioned as a termination.

3. Defendants' actions were retaliatory and pretextual. The discipline imposed was disproportionate, selectively enforced, and inconsistent with the treatment of similarly situated employees, supporting a plausible inference of unlawful motive.

4. The timing of the adverse actions – occurring shortly after Plaintiff's protected activity – further supports a causal connection. Defendants stated reasons for the discipline are not credible and do not reflect the true basis for the termination.

5. Defendants acted under color of state law and pursuant to official policies, customs, or practices of the City of Houston. The individual Defendants directly participated in the conduct giving rise to these claims.

6. As a result, Plaintiff suffered lost wages and benefits, reputational harm, and emotional distress, and seeks all relief available under federal law.

## I.      JURISDICTION AND VENUE

7. This Court had subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

8. This Court has supplemental jurisdiction over Plaintiff's related state law claims, if any, pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District, including in Houston, Texas.

## II.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation in violation of Title VII.

11. On or about March 10, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, thereby exhausting Plaintiff's administrative remedies and authorizing the filing of this action.

12. Plaintiff has filed this lawsuit within ninety (90) days of receipt of the Notice of Right to Sue and has satisfied all administrative prerequisites to suit under the Title VII.

## III.  PARTIES

13. Plaintiff, Kemarley Braham, is an individual and resident of the State of Texas. At all relevant times, Plaintiff was employed as a police officer by the City of Houston.

14. Defendant City of Houston is a municipal corporation organized under Texas law. Defendant Houston Police Department is a department of the City of Houston and is not a separate legal entity but is included herein for identification purposes.

15. Defendants Joey Ellis, Juanita Veldez, Andrew Zimzores, and William Smith (collectively, the "Individual Defendants") are individuals who, at all relevant times, were employees of the City of Houston and acted under color of state law.

16. At all relevant times, The Individual Defendants acted within the course and scope of their employment and were personally involved in, or knowingly acquiesced to, the conduct giving rise to Plaintiff's claims.

## IV.  FACTUAL ALLEGATIONS

### A. EMPLOYMENT BACKGROUND

17. Plaintiff, Kemarley Braham, was employed as a police officer with the Houston Police Department and, at all relevant times, performed his duties in accordance with departmental standards and expectations.

18. Plaintiff maintained a record of satisfactory performance and received commendations reflecting his competence, professionalism, and commitment to his duties.

19. Prior to the events giving rise to this action, Plaintiff was qualified for his position and had not engaged in conduct warranting termination.

**B.  PROTECTED ACTIVITY**

20. On or about May 17, 2025, Plaintiff engaged in protected activity by filing a civil action asserting violations of his constitutional rights against Defendants.

21. Plaintiff's filing of said lawsuit constitutes protected activity under Title VII and the First Amendment, including the right to access the courts and seek redress for grievances.

**C.  INCIDENT AND INVESTIGATION**

22. Shortly after Plaintiff engaged in protected activity, Defendants initiated disciplinary proceedings against Plaintiff arising from an incident occurring in or about May 2025.

23. The allegations against Plaintiff included responding to an incorrect location during dispatch, delayed or incomplete communication with dispatch, failure to timely activate a body-worn camera, and use of personal phone during portions of the dispatch.

24. The alleged conduct did not involve criminal wrongdoing, excessive force, dishonesty, or any conduct that posed a threat to public safety.

25. Upon information and belief, the investigation focused disproportionately on minor procedural deviations while disregarding the totality of Plaintiff's performance and the circumstances surrounding the incident.

**D.  DISPROPORTIONATE AND UNEQUAL DISCIPLINE**

26. The conduct attributed to Plaintiff was administrative or procedural in nature and is typically addressed through progressive discipline.

27. Notwithstanding the minor nature of the alleged violations, Defendants imposed indefinite suspension, which functioned as a termination of Plaintiff's employment.

28. Upon information and belief, similarly, situated officers who engaged in comparable or more serious conduct were not subjected to termination.

29. Defendants' decision to terminate Plaintiff represented a departure from standard disciplinary practices and was inconsistent with the treatment of other employees.

30. Such disparate treatment supports an inference of unlawful discrimination and retaliation.

### E. PRETEXT AND RETALIATORY MOTIVE

31. Defendants stated reasons for Plaintiff's discipline and termination were false, misleading, and pretextual.

32. The investigation emphasized minor infractions while ignoring mitigating factors, including Plaintiff's prior performance history and the absence of any serious misconduct.

33. The severity of the discipline imposed was grossly disproportionate to the alleged conduct.

34. Defendants selectively enforced policies and standards against Plaintiff in a manner designed to justify a predetermined outcome.

35. The totality of the circumstances supports a reasonable inference that Plaintiff's protected activity was a but-for cause of the adverse employment action.

### F. TEMPORAL PROXIMITY AND CAUSATION

36. The disciplinary action against Plaintiff was initiated shortly after his protected activity.

37. Plaintiff's termination followed within a close temporal proximity to his exercise of protected rights.

38. The timing of these events, combined with the absence of a legitimate non-retaliatory basis, supports a causal connection between Plaintiff's protected activity and the adverse employment action.

## G. RESULTING DAMAGES

39. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer loss of wages, benefits, earning capacity, emotional distress, mental anguish, humiliation, damage to his professional reputation, career prospects, and other economic and non-economic damages.

## V.     CAUSES OF ACTION

## A. TITLE VII RETALIATION

40. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

41. Plaintiff engaged in protected activity within the meaning of Title VII, including filing a civil action asserting violations of his legal and constitutional rights.

42. Defendants were aware of Plaintiff's protected activity at all relevant times.

43. Following Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse employment actions, including but not limited to heightened scrutiny, disciplinary investigation, and ultimately indefinite suspension amounting to termination.

44. An adverse employment action is materially adverse where it might dissuade a reasonable worker from engaging in protected activity. Defendants' actions meet and exceed this standard. See *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

45. A causal connection exists between Plaintiff's protected activity and the adverse employment action, as demonstrated by:

- Close temporal proximity;

- Disparate treatment compared to similarly situated employees;

- Selective enforcement of policies; and

- Pretextual explanations offered by Defendants.

46. Plaintiff's protected activity was the but-for cause of Defendants' decision to terminate his employment, such that the adverse action would not have occurred in the absence of Plaintiff's protected conduct. See *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

47. Under the *McDonnell Douglas* burden-shifting framework, Plaintiff has established a prima facie case of retaliation. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

48. Defendants may attempt to articulate legitimate, non-retaliatory reasons for their actions; however, those reasons are false, inconsistent, and unworthy of credence.

49. A plaintiff may demonstrate pretext by showing that the employer's explanation is false or that similarly situated employees were treated more favorably. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

50. Plaintiff was treated less favorably than similarly situated employees who engaged in comparable or more serious conduct but were not terminated.

51. The Fifth Circuit recognizes that temporal proximity, combined with other evidence, may support a finding of causation. See *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

52. The totality of the circumstances demonstrates that retaliation was the determinative and but-for cause of Plaintiff's termination.

53. Accordingly, Defendants are liable for retaliation in violation of Title VII, and Plaintiff is entitled to all available relief.

## B. WRONGFUL TERMINATION (RETALIATORY DISCHARGE)

54. Plaintiff incorporates all preceding paragraphs.

55. Plaintiff's termination was not the result of legitimate disciplinary action, but rather was motivated by retaliatory animus in response to Plaintiff's protected activity.

56. Defendants' stated reasons for terminating Plaintiff were false, pretextual, and inconsistently applied, and do not reflect the true basis for the adverse employment action.

57. The alleged misconduct attributed to Plaintiff consisted of minor, administrative, or procedural infractions that do not ordinarily warrant termination.

58. The discipline imposed—termination—was grossly disproportionate to the alleged conduct and deviated from established disciplinary practices.

59. Pretext may be established where an employer's explanation is false, inconsistent, or applied in a disparate manner. See *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

60. Plaintiff was treated less favorably than similarly situated employees who engaged in comparable or more serious conduct but were not terminated.

61. Defendants selectively enforced policies and disciplinary standards against Plaintiff in a manner designed to justify a predetermined outcome.

62. Such conduct violates clearly established public policy and federal anti-retaliation principles.

63. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages for which Defendants are liable.

## C. 42 U.S.C. § 1983 (FIRST AMENDMENT RETALIATION)

64. Plaintiff incorporates all preceding paragraphs.

65. Plaintiff engaged in constitutionally protected activity, including filing a lawsuit and exercising his right to petition the government and access the courts under the First Amendment.

66. Defendants, acting under color of state law, subjected Plaintiff to adverse employment actions that would chill a person of ordinary firmness from continuing to engage in protected conduct.

67. Plaintiff's protected activity was a substantial or motivating factor in Defendants' decision to terminate him.

68. The Fifth Circuit has long recognized that retaliation against a public employee for exercising First Amendment rights is actionable under §1983. See *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

69. Once a plaintiff establishes that protected activity was a motivating factor, the burden shifts to the employer to demonstrate that the same action would have been taken in the absence of the protected conduct. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

70. Defendants cannot meet this burden, as their stated reasons for terminating Plaintiff are pretextual, inconsistent, and unsupported by legitimate evidence.

71. Defendants' actions were intentional, willful, and taken with reckless disregard for Plaintiff's constitutional rights.

72. Accordingly, Defendants are liable under 42 U.S.C. § 1983.

### D. MUNICIPAL LIABILITY (MONELL CLAIM)

73. Plaintiff incorporates all preceding paragraphs.

74. Defendant City of Houston is liable under 42 U.S.C. § 1983 because Plaintiff's injuries were caused by official policies, customs, or practices.

75. A municipality may be held liable where an official policy or custom exists, a policymaker had actual or constructive knowledge; and the policy was the moving force behind the constitutional violation. See *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

76. Upon information and belief, the City of Houston maintained policies, customs, or practices that:

- Permitted or tolerated retaliation against employees who engaged in protected activity;

- Allowed discretionary disciplinary decisions without adequate safeguards or accountability;

- Failed to adequately investigate, supervise, or correct retaliatory conduct; and

- Encouraged or ratified unconstitutional actions by supervisory personnel.

77. The City exhibited deliberate indifference to the known or obvious consequences of these policies, including the violation of employees' constitutional rights.

78. The unconstitutional conduct was carried out by individuals with final policymaking authority, or was ratified by such policymakers after the fact.

79. These policies, customs, and practices were the moving force behind Plaintiff's injuries.

80. Accordingly, Defendant City of Houston is liable under §1983.

## VI.    QUALIFIED IMMUNITY DOES NOT APPLY

81. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

82. The Individual Defendants are not entitled to qualified immunity because Plaintiff has alleged facts showing (1) the violation of a constitutional right, and (2) that

the right was clearly established at the time of the conduct. See *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

83. No reasonable official could believe that terminating an employee where protected activity was the but-for cause of the decision is lawful.

### A. VIOLATION OF CONSTITUTIONAL RIGHTS

84. Plaintiff engaged in constitutionally protected activity, including filing a lawsuit and exercising his right to access to the courts under the First Amendment.

85. Defendants retaliated against Plaintiff by subjecting him to adverse employment actions, including termination.

86. Retaliation for the exercise of First Amendment rights constitutes a violation of clearly established constitutional protections. See *Beattie v. Madison County Sch. Dist.* 254 F.3d 595, 601 (5th Cir. 2001).

### B. CLEARLY ESTABLISHED LAW

87. At the time of Defendants' conduct, it was clearly established that a public employer may not retaliate against an employee for engaging in protected speech or petitioning activity.

88. The Fifth Circuit has long held that public employees are protected from retaliation when they exercise their constitutional rights. See *Colson v. Grohman,* 174 F.3d 498, 508-09 (5th Cir. 1999).

89. It was also clearly established that adverse employment actions taken in response to protected activity violate the Constitution where such actions would chill a person of ordinary firmness from continuing to engage in such conduct.

### C. OBJECTIVE UNREASONABLENESS

90. The Individual Defendants' conduct was objectively unreasonable in light of clearly established law.

91. No reasonable official in Defendants' position could have believed that terminating Plaintiff for engaging in protected activity was lawful.

92. Defendants' reliance on minor and pretextual disciplinary infractions does not render their conduct reasonable under clearly established law.

### D. CAUSATION AND RETALIATORY INTENT

93. Plaintiff's protected activity was a substantial and motivating factor in Defendants' actions.

94. Defendants cannot demonstrate that they would have taken the same action in the absence of Plaintiff's protected conduct. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

### E. CONCLUSION

95. Because Defendants violated clearly established constitutional rights and acted unreasonably under the circumstances, qualified immunity does not shield the Individual Defendants from liability.

## VII. DAMAGES

96. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to:

- Back pay, including lost wages, salary, bonuses, and employment benefits from the date of termination to present;

- Front pay in lieu of reinstatement, including future lost earnings and benefits;

- Compensatory damages, including emotional distress, mental anguish, humiliation, and loss of enjoyment of life;

- Reputational harm and loss of career opportunities;

- Punitive damages against the Individual Defendants for their willful, malicious, and reckless disregard of Plaintiff's federally protected rights; and

- Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k).

97. Plaintiff further seeks pre-judgment and post-judgment interest as allowed by law.

98. Plaintiff seeks reinstatement where feasible, or front pay in lieu thereof.

## VIII.  JURY DEMAND

99. Plaintiff hereby demands a trial by jury on all issues so triable.

## IX.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that upon final trial, Plaintiff have judgment against Defendants as follows:

1. For actual and compensatory damages in an amount to be determined at trial;

2. For back pay and front pay, including all lost wages and benefits;

3. For punitive damages as permitted by law;

4. For reasonable attorney's fees and costs;

5. For pre-judgment and post-judgment interest as allowed by law; and

6. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

Infinity Law Group PLLC
440 Louisiana Street,
Suite 900,
Houston, TX 77002

_____
Lena Hinton
Attorney for KEMARLEY BRAHAM
Bar No. 24132526
lena@infinitylawgroup.net
lena@infinitylawgroup.ai
Office Phone: (832) 479-1832

## Certificate of Service

I hereby certify that on this 15th day of April, 2026, a true and correct copy of the foregoing Plaintiff's First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, in accordance with the Federal Rules of Civil Procedure.

_____
Lena Hinton
Attorney for KEMARLEY BRAHAM